IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HOLY SPIRIT ASSOCIATION FOR THE :
UNIFICATION OF WORLD CHRISTIANITY :
                                :

             **Plaintiff,**       :

       **v.**                 :     **3:18-CV-1508**
                             :     **(JUDGE MARIANI)**

**WORLD PEACE AND UNIFICATION** :
**SANCTUARY, INC.**           :

             :

       **Defendant.**     :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

In this case, Plaintiff, Holy Spirit Association For The Unification of World Christianity ("HSA-UWC") has brought suit against Defendant, World Peace and Unification Sanctuary, Inc. ("Sanctuary Church") for violating provisions of the Lanham Act, 15 U.S.C. § 1114, *et seq.* (Doc. 1). The Lanham Act provides that "[a]ny person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided." 15 U.S.C. § 1114(1). Plaintiff has brought four causes of action under the Lanham Act.

Plaintiff's first cause of action alleges that HSA-UWC "possesses valid and enforceable rights in the TWELVE GATES Mark in connection with all of the goods and services at issue in this case by virtue of their extensive use, registration, promotion, and advertisement of the TWELVE GATES Mark, and has possessed such rights at all times material hereto." (Doc. 1, ¶ 52). Count One further alleges that the "Defendant's Marks create the same or similar commercial impression as the TWELVE GATES Mark as evidenced by, among other things, their similar appearance to the TWELVE GATES Mark and Defendant's use of Defendant's Marks in connection with religious services which are competitive with Plaintiff's religious services." (*Id.* at ¶ 53).

Plaintiff HSA-UWC alleges that Defendant Sanctuary Church's conduct in its use of the TWELVE GATES Mark is "willful, deliberate, in bad faith and undertaken with knowledge of Plaintiff's prior rights, and with full knowledge that Sanctuary Church has no right, license, or authority to use Plaintiff's Mark or any confusingly similar variant thereof." (*Id.* at ¶ 54). HSA-UWC further alleges that Defendant's "unauthorized use of Plaintiff's Mark is likely to cause confusion, or to cause mistake, or to deceive as to sponsorship, affiliation, connection, or association of Defendant or Defendant's commercial activities with Plaintiff or Plaintiff's commercial activities, or as to the origin, sponsorship or approval of Defendant's services or commercial activities by Plaintiff." (*Id.* at ¶ 55). Plaintiff alleges that the

Defendant's actions as alleged constitute "willful violation of Plaintiff's TWELVE GATES Mark in violation of the Lanham Act, 15 U.S.C. § 1114." (*Id.* at ¶ 56).[1]

In its second cause of action brought under the Lanham Act, 15 U.S.C. § 1125(c), Plaintiff asserts that as a result of its "extensive advertisement and promotion of its religious services and outreach, the TWELVE GATES Mark has become famous in the United States and throughout the world." (Doc. 1, ¶ 59). Plaintiff thus alleges that Defendant Sanctuary Church commenced its unlawful use of the TWELVE GATES Mark after the TWELVE GATES Mark had become famous and, as a consequence, Plaintiff HSA-UWC asserts that "[r]elevant consumers are likely to make an association between Defendant's Marks and the TWELVE GATES Mark"; that the Defendant's Marks "are likely to impair the distinctiveness of Plaintiff's TWELVE GATES Mark"; that Defendant's Marks "are likely to blur and/or tarnish the positive associations with Plaintiff's TWELVE GATES Mark"; and that accordingly the Defendant's actions "constitute trademark dilution in violation of the Lanham Act, Section 43(c), 15 U.S.C. 1125(c)." (*Id.* at ¶¶ 61-64).

Plaintiff's third cause of action alleges that the Defendant's actions as described herein constitute unfair competition under the common law.

---

[1] In paragraphs 27 and 28 of its Complaint, HSA-UWC alleges that in 1965 the Reverend Sun Myung Moon developed the TWELVE GATES Mark "to serve as the distinctive trademark of HSA-UWC" and that Reverend Moon "ensured that every aspect of the unique design of the TWELVE GATES Mark holds symbolic meaning to Unification Church members." Further, HSA-UWC asserts that "[t]he TWELVE GATES Mark as a whole signifies the cosmos with God at the center. The shape of the Mark represents the steering wheel of a boat to symbolize steering the cosmos. Moreover the twelve rays emanating from the center represent the twelve months of the year while the four wider lines represent the cardinal directions – east, west, south and north." (Doc. 1 at ¶¶ 27, 28).

Finally, the fourth cause of action, "False Suggestion of Connection, under the Lanham Act, 15 U.S.C. § 1052(a)", again asserts that the TWELVE GATES Mark is "famous in the United States and throughout the world" and that Defendant's Marks "create the same or similar commercial impression as, or is a close approximation of, the TWELVE GATES Mark and falsely suggests a connection with HSA-UWC" when Plaintiff HSA-UWC is not connected with the Sanctuary Church. (Doc. 1, ¶¶ 71-73). Accordingly, Plaintiff alleges that "[d]ue to the fame of Plaintiff and the TWELVE GATES Mark, when Defendant's Marks are used in commerce, a connection with Plaintiff is presumed by the consuming public" and thus "Defendant's use of Defendant's Marks are likely to create a false sense of connection to Plaintiff in violation of Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a)", thereby causing irreparable injury to Plaintiff. (*Id.* at ¶¶ 74-76).

Defendant Sanctuary Church has filed an Answer with Affirmative Defenses and has also set forth counterclaims. (Doc. 13). Defendant, in its Answer to Plaintiff's Complaint, admits "that the Tongil symbol is used by the Unification Church and all those who follow the teachings of Rev. Sun Myung Moon worldwide in the conducting of religious ceremonies and rituals, and that the Tongil symbol was created by Reverend Sun Myung Moon." (*Id.* at ¶ 4). The Defendant Sanctuary Church further states that the "Tongil symbol is a religious symbol having deep meaning for all followers of Rev. Sun Myung Moon throughout the world, including members of Sanctuary, and is used on all wedding rings, gravesite monuments and other personal items, in addition to being used during worship services and

4

in theological texts." (*Id.*). Defendant again admits that it uses the Tongil symbol "as a daily part of the religious practice of its supporters and in its Sanctuary's worship services." (*Id.* at ¶ 8).

However, Defendant Sanctuary Church in its Answer to the Plaintiff's Complaint asserts that the Tongil symbol is a "religious symbol" and "was created to be used by members of the Unification Church worldwide, and not as 'the distinctive trademark of HSA-UWC' as alleged by Plaintiffs, as it is not a 'trademark' and was not created for exclusive use by HSA-UWC." (*Id.* at ¶ 27).

Throughout its Answer, Defendant denies that the "TWELVE GATES Mark or Tongil symbol is a valid trademark or service mark owned by Plaintiff." (*See e.g., id.* at ¶¶ 28, 30). With respect to the Plaintiff's assertion in its Complaint that the TWELVE GATES Mark is the subject of a valid and subsisting United States trademark registration, serial number 77,626,340, which was registered by Plaintiff on June 30, 2009, Sanctuary Church responds by denying that "the alleged 'TWELVE GATES Mark' is a valid trademark or service mark owned by Plaintiff, and submits that the Tongil symbol is a sacred religious symbol that is free to be used by all followers of the teachings of Rev. Sun Myung Moon." (*Id.* at ¶ 32).

The Defendant also denies in its Answer that the TWELVE GATES Mark is "distinctive and famous." (*Id.* at ¶ 35).

Defendant Sanctuary Church does admit that "it has used the Tongil symbol as part of its religious rituals, ceremonies, and ministries since 2013 as followers of the religious

teachings of Reverend Sun Myung Moon, including use in connection with religious services, newsletters, its website, and in videos posted on YouTube and Vimeo." (*Id.* at ¶ 40).

Sanctuary Church denies the allegations of Plaintiff's first, second, third and fourth causes of action. (*See generally*, Answer, Doc. 13, ¶¶ 51-77).

Following its Answer to the allegations of Plaintiff's Complaint, the Sanctuary Church also asserts a number of Affirmative Defenses (*see* Doc. 13, at 34-37) which the Court will not set forth at length here.

Defendant Sanctuary Church then sets forth Counterclaims against HSA-UWC. (Counterclaims, Doc. 13, at 38-59). Paragraphs five, six, and seven are set forth under the heading "Factual Background." Paragraphs eight through twelve contain the Defendant/Counterclaim Plaintiff's allegations regarding the appointment of Sean Moon by the Rev. Sun Myung Moon as his "legitimate heir and successor in order to continue the Unification Church's religious work worldwide." Paragraphs 13 through 20 of the Sanctuary Church's counterclaims are set forth under the subtitle "Hak Ja Han Moon's Takeover as Successor", and paragraphs 21 through 28 proceed under the subtitle "Hak Ja Han Moon's changes of Rev. Moon's Theology." Paragraphs 29 and 30 of Sanctuary Church's counterclaims proceed under the subtitle "Sean Moon's Creation of Sanctuary" and paragraphs 31 though 50 are set forth under the heading "Use of the Tongil Symbol by Sanctuary." Paragraphs 46 through 54 of Sanctuary Church's counterclaims against HSA-

6

UWC proceed under the heading "Meaning of 'Cheon II Guk' and its Use by the Unification Church and Sanctuary."

Thereafter, Sanctuary Church, the Defendant/Counter-Plaintiff, sets forth four causes the action. The first count seeks cancellation of the registered trademark issued to Counter-Defendant HSA-UWC on the basis that the "Tongil symbol is used not only by Counter-Plaintiffs, but all individuals across the globe who follow the teachings of the late Reverend Sun Myung Moon"; that the Tongil symbol "is not a trademark or service mark but is instead a 'universal symbol' or generic religious symbol central to the worship and religious ceremonies of followers of Reverend Sun Myung Moon." (Counterclaims, Doc. 13, ¶¶ 58-59). Count One further asserts that the Tongil symbol is a "universal symbol and functions in an ornamental and/or descriptive manner, but does not function as a trademark or service mark, making it unregistrable before the U.S. Trademark Office." (Id. at ¶ 60). Sanctuary Church alleges that "its free exercise of religion will be infringed if Counter-Defendant is permitted to maintain and enforce its trademark registration for the Tongil symbol against Counter-Plaintiff, Sanctuary Church." (Id. at ¶ 61). Sanctuary Church as Counter-Plaintiff asserts that the Tongil symbol is a "generic religious symbol that is used by all followers of the teachings of Rev. Sun Myung Moon" such that if HSA-UWC is permitted exclusive right to use the Tongil symbol, Sanctuary Church's right to the free exercise of religion under the First Amendment will be violated. (Id. at ¶ 62).

The Counter-Plaintiff Sanctuary Church thus requests this Court order the U.S. Patent and Trade Office to cancel trademark Reg. No. 3646838 on the ground that it is a "universal symbol" i.e., a "generic religious symbol to which no party should have an exclusive right to use", and for the reason that it does not "function as a trademark or service mark" and instead it is a "universal religious symbol similar to a Cross or Star of David." (*Id.* at ¶ 63).

Count II, entitled "Declaratory Judgment of Non-Infringement and Declaratory Judgment of No Unfair Competition", is assertedly brought under 15 U.S.C. §§1114 and 1125. Here, the Sanctuary Church again alleges that the Tongil symbol or the TWELVE GATES Mark, as it is referred to by the Counterclaim-Defendant HSA-UWC, is a "universal symbol" or a "generic religious symbol" which the Sanctuary Church asserts "does not function as a trademark or service mark and is not protectable or enforceable as such." Sanctuary Church asserts that HSA-UWC "does not own a valid and enforceable federal trademark registration for the Tongil symbol" and "does not own valid and enforceable unregistered trademark rights in the Tongil symbol." (Counterclaims, Doc. 13, ¶ 66). Sanctuary Church thus seeks judgment from this Court declaring that its use of the Tongil symbol in connection with its religious activities does not constitute trademark infringement or unfair competition and further seeks a judgment from this Court declaring that the First Amendment prevents any finding of liability on the part of Sanctuary Church and precluding the Plaintiff/Counterclaim-Defendant HSA-UWC from entitlement to injunctive relief or

monetary damages for trademark infringement or unfair competition under the Lanham Act. (*See id.* at ¶¶ 67-69). Alternatively, the Sanctuary Church asserts that, should this Court find that the Tongil symbol serves as a trademark, the Court enter a judgment that Counter-Defendant HSA-UWC "is not the true owner of any trademark rights in the Tongil symbol by virtue of Sean Moon's inheritance of all Unification Church intellectual property as the only true and rightful successor to the Rev. Sun Myung Moon." It further seeks in the alternative, should this Court find that the Tongil symbol serves as a trademark, a judgment that it is an authorized licensee of the trademark and is therefore free to use the Tongil symbol. (*Id.* at ¶¶ 70-71).

Count III, "Declaratory Judgment of No Dilution" brought pursuant to 15 U.S.C. § 1125(c), generally asserts that the Tongil mark is not a "famous mark" and that Sanctuary Church has not engaged in trademark dilution. (*See generally, id.* at ¶¶ 72-78).

Count IV, entitled "Declaratory Judgment of Non-Infringement of 'Cheon Il Guk' and Declaratory Judgment that 'Cheon Il Guk' is Generic and Fails to Function as Trademark", asserts that the Plaintiff/Counterclaim-Defendant HSA-UWC has applied to register the term "Cheon Il Guk" as a trademark before the U.S. Patent and Trademark Office in an attempt to secure exclusive rights to that term. (Counterclaims, Doc. 13, ¶¶ 80-81). Thus, Sanctuary Church seeks a judgment from this Court declaring that Sanctuary Church's use of the term "Cheon Il Guk" in connection with its religious activities does not constitute trademark infringement in the "generic phrase 'Cheon Il Guk'" and also that a finding of infringement

that would entitle HSA-UWC to relief would be an unconstitutional violation of Sanctuary Church's First Amendment rights to the free exercise of religion. (*Id.* at ¶ 83).

As additional alternatives, Sanctuary Church requests that this Court, should it find that "Cheon II Guk" serves as a trademark, enter a judgment that the Plaintiff/Counter-Defendant HSA-UWC is not the true owner of any trademark rights in the term "Cheon II Guk" by virtue of Sean Moon's inheritance of all Unification Church intellectual property "as the only true and rightful successor to the Rev. Sun Myung Moon." It is further requested that, should the Court determine that the term "Cheon II Guk" serves as a trademark, the Court enter a judgment that Sanctuary Church is an authorized licensee of the trademark and therefore is free to use that term without fear of liability. (*Id.* at ¶¶ 84-85).

In response to Sanctuary Church's Counterclaims, HSA-UWC, the Plaintiff/Counterclaim-Defendant, has filed a "Motion to Dismiss Defendant's Counterclaims and Strike Certain Affirmative Defenses and Allegations." (Doc. 23). HSA-UWC moves to dismiss Defendant's Counterclaims I and II for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and to stay Defendant's counterclaims in Count IV pending determination in the proceedings before the Trademark Trial and Appeal Board ("TTAB") or, in the alternative, dismiss that counterclaim. (*Id.* at ¶¶ 3, 5). In addition, Plaintiff has moved to strike Defendant's Third through Fourteenth, Seventeenth, and Twenty-Sixth Affirmative Defenses, asserting that the affirmative defenses "either lack any

legal merit and are precluded as a matter of law or should be stricken as immaterial or impertinent pursuant to Fed. R. Civ. P. Rule 12(f)." (*Id.* at ¶ 4).

## II. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14

(3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

### III. ANALYSIS

The allegations of Counts I, II, and IV of Sanctuary Church's counterclaims set forth factual assertions and resulting legal conclusions which present sharp disputes between the parties. The TWELVE GATES Mark or Tongil symbol is at the core of these disputes.[2] Specifically, whether the TWELVE GATES symbol is a generic religious symbol or a

---

[2] HSA-UWC states it has referred "to the 'Tongil' symbol and the TWELVE GATES Mark interchangeably based on Defendant's acknowledgement that the two are one and the same." (Doc. 48 at 3, n.3).

descriptive term under the Lanham Act present factual issues which cannot be resolved in the context of a motion to dismiss Sanctuary Church's properly pleaded counterclaims. Indeed, Counts I and II of Sanctuary Church's counterclaims are founded on sufficiently pleaded allegations that the TWELVE GATES or Tongil symbol is a generic religious symbol which does not provide a basis for a valid trademark notwithstanding the HSA-UWC's registration of the TWELVE GATES symbol with the U.S. Patent Office.

In *General Conference Corporation of Seventh-Day Adventists v. Perez*, 97 F.Supp.2d 1154 (S.D. Fla. 2000), the court summarized the terms which may be registered as trademark and the necessary conditions for doing so:

> [ ] The Lanham Act, 15 U.S.C. § 1051 et seq. provides that no person shall, without consent of the registrant, use in commerce any trademark if "such use is likely to cause confusion, or to cause mistake or to deceive." *Id.* at § 1114(1)(a).

> [ ] Terms which may be registered as trademarks fall into four categories of strength (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary. *American Television v. American Communications*, 810 F.2d 1546, 1548 (11th Cir. 1987); *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1540 (11th Cir. 1985). "Generic" terms are those which name "the genus or class of which an individual article or service is but a member." "Descriptive" terms "identify a characteristic or quality of an article or service." "Suggestive" terms suggest characteristics of the goods and services and "require an effort of the imagination by the consumer in order to be understood as descriptive." "Fanciful" or "arbitrary" terms are words or phrases that bear no direct relationship to the product. Generic terms represent the weaker end of the spectrum and arbitrary terms represent the stronger. *Vision Ctr. v. Opticks*, 596 F.2d 111, 115 (5th Cir.1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).

> [ ] Generic terms may never be registered as trademarks under the Lanham Act. 15 U.S.C. § 1052(e). Descriptive terms may not be registered as

13

trademarks under the Lanham Act, unless the holder shows that the mark has acquired "secondary meaning." 15 U.S.C. § 1052(e)(1), (f); *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1549 (11th Cir. 1984); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir.1976). Proof of secondary meaning in a trademark requires a showing that the mark has become distinctive of the trademark holder's product or services.

[ ] Five years after registering a mark, the holder may file the affidavit required by § 1065 and have its marked declared "incontestable." 15 U.S.C. § 1065(3). Once a mark has become "incontestable," its validity is presumed, subject to certain enumerated defenses set out in 15 U.S.C. § 1115(b). *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 327 (11th Cir. 1989).

[ ] The Lanham Act, 15 U.S.C.A. § 1114(1) provides the Plaintiff in a trademark infringement action has made a prima facie case if the Plaintiff shows first that its mark is valid and second that the Defendant's use of Plaintiff's mark is likely to cause confusion. Determination of likelihood of confusion requires analysis of seven factors (1) type of mark, (2) similarity of marks, (3) similarity of the products and/or services the marks represent, (4) similarity of the parties' retail outlets and customers, (5) the similarity of advertising media used, (6) Defendant's intent and (7) actual confusion. *Dieter v. B & H Indus. of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989), cert. denied, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

87 F.Supp.2d at 1156-1157.

Because the Counterclaim-Plaintiff Sanctuary Church has sufficiently placed in dispute questions of fact as to the proper categorization of the TWELVE GATES Mark or Tongil symbol, USA-UWC's motion to dismiss Counts I and II will be denied.

Similarly, Count IV of Sanctuary Church's Counterclaims present an assertion that the term "Cheon II Guk" is generic, an assertion of fact which may not be resolved on a motion to dismiss pursuant to Rule 12(b)(6). (*See* Counterclaims, Doc. 13, ¶¶ 46-54).

14

Accordingly, Plaintiff/Counterclaim-Defendant HSA-UWC's motion to dismiss Count III of Sanctuary Church's counterclaims will be denied.

The arguments raised by Plaintiff/Counterclaim Defendant HSA-UWC to support its assertion that the TWELVE GATES Mark "functions as a trademark" are unavailing at this stage of the proceedings and better reserved for a dispositive motion at the close of discovery or at trial. This is largely so because HSA-UWC's arguments seek to refute, on the merits, the specific factual assertions of Sanctuary Church's counterclaims with respect to genericness or as to the meaning of the term "Cheon Il Guk."

A generic term is one "which function[s] as the common descriptive name of a product class." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986). It "refers to the genus of which the particular product is the species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985); *see also Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 14 (1st Cir. 2008) ("Rather than answering the question 'where do you come from?,' a generic term merely explains 'what are you?' . . . . [Generic terms] serve primarily to describe products rather than identify their sources . . . .").

The Lanham Act "provides no protection for generic terms because a first-user of a term 'cannot deprive competing manufacturers of the product of the right to call an article by its name.'" *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008) (quoting *A.J. Canfield*, 808 F.2d at 297). Thus, the Act states that a registered mark that

15

"becomes the generic name for the goods or services, or a portion thereof, for which it is registered" may be canceled "[a]t any time." 15 U.S.C. § 1064(3).

If a mark is generic, it does not matter whether the mark would be otherwise incontestable. *See* 15 U.S.C. § 1065(4) ("[N]o incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered."). "The same rule applies when the word designates the product in a language other than English. This extension rests on the assumption that there are (or someday will be) customers in the United States who speak that foreign language. Because of the diversity of the population of the United States, coupled with temporary visitors, all of whom are part of the United States marketplace, commerce in the United States utilizes innumerable foreign languages. No merchant may obtain the exclusive right over a trademark designation if that exclusivity would prevent competitors from designating a product as what it is in the foreign language their customers know best. Courts and the USPTO apply this policy, known as the doctrine of 'foreign equivalents,' to make generic foreign words ineligible for private ownership as trademarks." *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270-271 (2d Cir. 1999) (internal citation omitted).

"There is a presumption in favor of a registered trademark and the burden of proof is upon one who attacks the mark as generic, but the presumption can be overcome by a showing by a preponderance of the evidence that the term was or has become generic." *Anti-Monopoly, Inc. v. Gen. Mills Fun Gp., Inc.*, 684 F.2d 1316, 1319 (9th Cir. 1982); *cf. also*

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir. 1976) (concluding

that registration "means not only that the burden of going forward is upon the contestant of

the registration but that there is a strong presumption of validity so that the party claiming

invalidity has the burden of proof and must put something more into the scales than the

registrant.") (internal citations, alterations, and quotation marks omitted); *interState Net*

*Bank v. NetB@nk, Inc.*, 221 F.Supp.2d 513, 517-518 (D.N.J. 2002) ("If a party has a federal

trademark registration, it constitutes a strong presumption that the term is not generic or

descriptive.").

The law cited thus far in this opinion, combined with the allegations of the Sanctuary

Church's counterclaims, lead unavoidably to the conclusion that dismissal of the Sanctuary

Church's counterclaims at the pleading stage is inappropriate. Nonetheless, the arguments

made by Sanctuary Church in its brief in opposition to the motion to dismiss (Doc. 36) are

likewise arguments directed to the merits of its claim that the "Tongil" mark is a universal

symbol, generic in nature, which therefore fails to function as a trademark and are no more

appropriate to a determination of HSA-UWC's motion to dismiss than the arguments made

by HSA-UWC in support of its motion. That is to say, both parties have engaged in

arguments which invite the Court to resolve the merits of the disputes between them. This,

the Court may not do on a motion to dismiss. It is sufficient to state that a review of the

pleadings of Sanctuary Church's counterclaims show that under the *Iqbal-Twombly*

analysis, the counterclaims of Sanctuary Church properly plead causes of action in Counts

I, II and IV as to the generic nature of the TWELVE GATES Mark or the "Tongil" symbol as well as the term "Cheon II Guk."

Sanctuary Church has also asserted that HSA-UWC's enforcement of its trademark rights violates the Sanctuary Church's religious freedom. HSA-UWC argues that "[w]hether based on First Amendment grounds (under both the Establishment Clause and the Free Exercise Clause) or under federal law (under the Religious Freedom Restoration Act or 'RFRA'), this claim is not plausibly meritorious as a matter of law" and cites to case law in support of its argument. (Doc. 29, at 10-11; *id.* at 11-13). Indeed, the applicable case law makes clear that "the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice" and further requires that "civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." *Jones v. Wolf*, 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). However, it also leaves no question that, as the Court held in *Jones*, "a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." *Id.* at 604. *See Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church*, 98 F.3d 78, 89 (3d Cir. 1996) (*Jones* "gives shape to the proper modern judicial approach to intrachurch disputes."). *See also, Askew v. Trustees of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 418-419 (3d Cir. 2012)("The First Amendment severely circumscribes the role that civil courts may play in resolving

18

disputes touching on matters of faith. Civil courts encroach on the autonomy of religious institutions when they inquire into ecclesiastical law and governance. The non-entanglement principle, anchored in First Amendment values, thus requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. In so doing, civil courts accept decisions of the highest religious decision-maker as binding fact, so long as those decisions are not tainted by fraud or collusion. . . . Still, the First Amendment does not remove from the purview of civil courts all controversies involving religious institutions. When a church dispute turns on a question devoid of doctrinal implications, civil courts may employ neutral principles of law to adjudicate the controversy.") (internal citations and quotation marks omitted).

Moreover, the neutral principles doctrine adopted in *Jones* have been specifically held to be exemplified in the application of the principles of the Lanham Act to resolve trademark infringement disputes between religious organizations. Thus, in *Maktab Tarighe Oveyssi Shan Maghoudi, Inc. v. Kianfar,* the Ninth Circuit Court of Appeals reversed the District Court's dismissal of a complaint brought by a religious order and its leader against former members of that order and against a competing organization established by former members who claimed legitimate successorship to the prior order and in doing so alleged trademark infringement and other state law claims. 179 F.3d 1244 (9th Cir. 1999). The Court of Appeals held that the claims could be addressed by the District Court without violating the First Amendment to the extent that they could be resolved by "neutral, secular

principles." The Court of Appeals, following the rule set forth in *Jones v. Wolf, supra*, held

that the claims of the plaintiff were susceptible to decision by neutral principles, in particular,

the trademark infringement provisions of the Lanham Act. The Court explained:

> Here, most of the claims stated in the First Amended Complaint are susceptible to decision by neutral principles. First and foremost, Angha and Shah Maghsoudi seek various forms of relief for trademark infringement and false designation of origin, under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). We have previously applied neutral principles of trademark infringement in disputes between religious organizations. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902 (9th Cir. 1995). The trademarks and service marks to which Shah Maghsoudi and Angha claim title and which they contend are infringed were registered to Angha, doing business as Shah Maghsoudi, between 1987 and 1991. This registration constitutes prima facie evidence that Angha owns the marks. *See Sengoku v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996). It also provides constructive notice of the claimed ownership of the marks. *See* 15 U.S.C. § 1072; *Park 'N Fly v. Dollar Park and Fly*, 469 U.S. 189, 199-200, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). In determining whether the trademarks have been infringed, the district court can apply the regular factors that courts employ to determine infringement. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The defendants can raise neutral defenses, such as prior use of the marks, to the extent that they are applicable. *See Sengoku*, 96 F.3d at 1219. To determine these issues, the district court has no need to decide who is the legitimate Forty-First Teacher of the Order or any other matter of religious doctrine. The same may be said for the federal claim of false designation of origin, *see Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534-35 (9th Cir. 1989) (rights protected under § 1125(a) are governed by same principles that govern trademark rights), and the state claim of unfair competition, *see Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir.1994) ("actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act").

179 F.3d at 1249-1250.

Here, while these principles will undoubtedly have application in the ultimate

determination of the present case, they do not provide a basis for dismissal of Sanctuary

20

Church's counterclaims on a motion to dismiss. This is again the case because Sanctuary Church's counterclaims are founded on the provisions of the Lanham Act and seek relief under that statute by alleging that the Tongil symbol is a "universal symbol and functions in an ornamental and/or descriptive manner, but does not function as a trademark or service mark, making it unregistrable before the U.S. Trademark Office" and also that the Tongil mark is a "generic religious symbol" which may therefore not be subject to trademark registration. (Counterclaims, Doc. 13, ¶¶ 60, 63). Similarly, Count II of Sanctuary Church's Counterclaims invoke §§ 1114 and 1125 of Title 15 and again assert that the Tongil symbol or the TWELVE GATES Mark is a "universal symbol" or a "generic religious symbol" which Sanctuary Church asserts "does not function as a trademark or service mark and is not protectable or enforceable as such." (*Id.* at ¶ 66).

Likewise, with respect to the term "Cheon Il Guk", the Counterclaim-Plaintiff Sanctuary Church asserts Lanham Act claims for its assertion that the term "Cheon Il Guk" is a generic phrase and therefore not subject to registration.

The Counterclaim-Plaintiff's arguments that, were a finding of infringement be made against them, that such a finding would be an unconstitutional violation of the Sanctuary Church's First Amendment rights to free exercise of religion, while appearing at this stage of the proceedings to be without strong foundation in law, do not compel or even permit the dismissal of Sanctuary Church's counterclaims which are otherwise properly pleaded under the provisions of the Lanham Act.

21

Similarly, determination of Sanctuary Church's claims of ownership of the TWELVE GATES Mark to the extent that it is determined to be a trademark, as well as its claim as alleged of licensed or authorized use of the TWELVE GATES Mark present issues of fact which preclude the disposition of those claims on HSA-UWC's motion to dismiss.

Sanctuary Church, in its brief in opposition to HSA-UWC's motion to dismiss, appropriately points out that the cases cited by HSA-UWC "were [not] decided on 12(b)(6) grounds." (Doc. 36, at 11). Sanctuary Church argues that this Court "should disregard Plaintiff's attempt to inappropriately argue this case on the merits through a motion to dismiss under Rule 12(b)(6). As there is no bright line rule or test as to when a court will determine whether a religious symbol or term functions as a trademark, discovery is necessary and appropriate. Sanctuary has sufficiently plead facts to survive a motion to dismiss." (Doc. 36 at 13). The Court, for the reasons set forth herein, agrees.

With respect to the Counterclaim Defendant HSA-UWC's request for a stay on the "Cheon Il Guk" mark pending resolution of the TTAB action, the Sanctuary Church cites a number of cases, including *Sturgis Motorcycle Rally, Inc. v. Farez Farrokhi. (Id.* at 18). There, the Trademark Trial and Appeal Board wrote:

> The Board's well-settled policy is to suspend proceedings when the parties are involved in a civil action or another Board proceeding which may be dispositive of or have a bearing on the Board case. Trademark Rule 2.117(a); *General Motors Corp. v. Cadillac Club Fashions Inc.*, 22 USPQ2d 1933, 1937 (TTAB 1992). Here, one of opposers pleaded registrations, i.e., Registration No. 3923284 for STURGIS in typed form is at issue in both proceedings. As such, a disposition relating to the registration in those proceedings will certainly have a bearing on this one. As such, we find that

the suspension of this matter is appropriate and hereby GRANT applicant's
motion to suspend. See Trademark Rule 2.117(a). Accordingly, proceedings
herein are SUSPENDED pending final disposition of the civil action and the
Board proceeding.

2013 WL 11247190, at *6 (T.T.A.B. 2013).

It is this Court's view that a stay of the proceedings in this case is unnecessary and a

denial of the request for a stay will not unduly prejudice either party. Nor will a stay in this

case simplify the issues or streamline trial. To the contrary, should the Trademark Trial and

Appeal Board decide not to stay the proceedings underway before that body concerning the

meaning of the "Cheon Il Guk" term, the decision of the TTAB may be given preclusive

effect. See B&B Hardware, Inc. v. Hargis Indus., Inc., --- U.S. ---, 135 S.Ct. 1293, 1305,

191 L.Ed.2d 222 (2015) (Supreme Court concluding "that nothing in the Lanham Act bars

the application of issue preclusion in such cases", referring to TTAB decisions "in which the

ordinary elements of issue preclusion are met.").

Conversely, should the TTAB invoke its "well-settled policy" to suspend proceedings

with respect to HSA-UWC and Sanctuary Church, no purpose would be served by a stay of

proceedings in the case before this Court.

Lastly, HSA-UWC requests that this Court strike Sanctuary Church's Third through

Fourteenth, Seventeenth, and Twenty-Sixth Affirmative Defenses. (Doc. 29, at 20).

Federal Rule of Civil Procedure 12 provides that a "court may strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Fed. R. Civ. P. 12(f).

23

District courts are afforded considerable discretion when addressing a motion to strike. Generally, motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.

*Yellow Book Sales & Distrib. Co., Inc. v. White*, 2011 WL 830520, at *4 (E.D. Pa. 2011)

(internal citations and quotation marks omitted). *See also, N. Penn Transfer, Inc. v.*

*Victaulic Co. of Am.*, 859 F.Supp. 154, 158 (E.D. Pa. 1994). "Indeed, striking a pleading 'is a

drastic remedy to be resorted to only when required for the purposes of justice' and should

be used 'sparingly.'" *DeLa Cruz v. Piccari Press*, 521 F.Supp.2d 424, 428 (E.D. Pa. 2007)

(quoting *N. Penn Transfer, Inc.*, 859 F.Supp. at 158); *see also Pozarlik v. Camelback*

*Assocs., Inc.*, 2011 WL 6003841, at *3 (M.D. Pa. 2011) ("[T]he standard for striking portions

of a plaintiffs complaint 'is strict and only allegations that are so unrelated to the plaintiffs'

claims as to be unworthy of any consideration should be stricken'") (quoting *Johnson v.*

*Anhorn*, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004)) (internal alterations omitted).

Sanctuary Church's Affirmative Defenses 3-14 are as follows:

3. Plaintiff's claims are barred, in whole or in part, from being heard by this Court by the free exercise of religion clause of the First Amendment of the United States Constitution, and the Establishment Clause.

4. Plaintiff's claims are barred, in whole or in part, from being heard by this Court by the doctrine of ecclesiastical abstention.

5. Plaintiff's claims are barred, in whole or in part, by the Religious Freedom Restoration Act, as granting the relief requested under the Lanham Act would infringe Defendant's religious freedom.

6. Plaintiff's claims are barred, in whole or in part, because Defendant has never used the alleged marks in commerce.

7. Plaintiff's claims are barred, in whole or in part, because Defendant's use, if any, of the alleged marks has only been in connection with religious rituals and other religious and theological purposes.

8. Plaintiff's claims are barred, in whole or in part, under the doctrine of trademark abuse, where enforcement of the alleged marks against Defendant is abusive, unfair and unreasonable in scope.

9. Plaintiff's claims are barred by license.

10. Plaintiff's claims are barred by implied license.

11. Plaintiff's claims are barred by Plaintiff's consent.

12. Plaintiff's claims are barred because these alleged marks were intended by the Rev. Sun Myung Moon to be used by all his followers, not just those that hijacked his congregation upon his death.

13. Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing to bring claims for trademark infringement against Defendant, as Plaintiff is not the owner of a valid trademark registration or valid unregistered trademark rights, since the Tongil symbol is a universal symbol incapable of functioning as a trademark and improperly granted registration.

14. Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled to a trademark registration because Sean Moon is the rightful heir of the Unification Church, making him the true owner of any intellectual property rights of the Unification Church.

(Doc. 13, Affirmative Defenses, ¶¶ 3-14). Affirmative Defenses 17 and 26, which HSA-UWC

also seeks to strike, state:

17. Plaintiff's claims are barred, in whole or in part, by the abandonment of any trademark rights through the doctrine of uncontrolled or naked licensing.

25

26. To the extent that Plaintiff claims intentional or knowing uses of the alleged marks, Defendant has not knowingly used the alleged marks in violation of Plaintiff's claimed rights.

(*Id.* at ¶¶ 17, 26).

Counterclaim-Defendant HSA-UWC asserts that these affirmative defenses "all offer some variation on the following erroneous statements that have been shown to be legally insufficient under any set of facts which may be properly inferred from Defendant's allegations." (Doc. 29, at 20). HSA-UWC argues that the Third through Seventh affirmative defenses "are recitals of Defendants' religious freedom claims, described in their Counterclaims", and that HSA-UWC has "demonstrated [in its brief] that the First Amendment and other legal protections for religious freedom preclude a finding of liability." (*Id.*). HSA-UWC further states that the Eighth through Fourteenth affirmative defenses "offer some iteration of a defense that Defendant has authorization to use the Marks," and then asserts that Sanctuary Church's claim of authorization is "false."

HSA-UWC's assertion of the falsity of Sanctuary Church's claim of authorization for use of the Marks is not a basis on which such affirmative defenses may be stricken. Instead the dispute as to the truth or falsity of the affirmative defense is quintessentially a matter which should not be resolved on a motion to strike, or, for that matter, by a motion to dismiss.

The Seventeenth affirmative defense is characterized by HSA-UWC as an allegation by Sanctuary Church that HSA-UWC has abandoned its trademark rights by uncontrolled

licensing to which it asserts that Sanctuary Church "has not alleged one other group that attempts to use the Marks besides it – and its use has been adamantly opposed by HSA-UWC." (Doc. 29, at 20). Here again, this is a dispute of fact which does not provide a basis to grant HSA-UWC's motion to strike.

Similarly, Counterclaim-Defendant HSA-UWC asserts that affirmative defense Twenty-Six claims that Sanctuary Church has not knowingly used the marks, which it asserts is "false." (Id.). However, a reading of affirmative defense Twenty-Six cannot be reconciled with HSA-UWC's characterization of it. Rather, that affirmative defense states: "To the extent that Plaintiff claims intentional or knowing uses of the alleged marks, Defendant has not knowingly used the alleged marks *in violation of Plaintiff's claimed rights*." (Doc. 13, Affirmative Defenses, ¶ 26).

What is presented here is an encapsulation of the factual disputes between the parties to this case which can only be resolved through the development of the parties' positions through the process of discovery, and thereafter, by dispositive motion or trial.

While it may well be that the factual development of this case will reveal that one, some, or all, of Sanctuary Church's affirmative defenses lack merit, in particular the fourth and fifth affirmative defenses, this Court is unable to say at this juncture that the assertions in the affirmative defenses in question are so unrelated to the claims and defenses of Sanctuary Church as to compel a ruling that they should be stricken. In addition there is no basis upon which to strike these affirmative defenses as immaterial or impertinent.

Accordingly, for all the foregoing reasons, the motion to dismiss filed by HSA-UWC the fourth through fourteenth, seventeenth and twenty-sixth affirmative defenses will be denied.

## IV. CONCLUSION

For the reasons set forth above, HSA-UWC's Motion to Dismiss Defendant's Counterclaims and Strike Certain Affirmative Defenses and Allegations (Doc. 23) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge